**James L. AADLAND, Petitioner,**

v.

**Alexander P. BUTTERFIELD, Administrator, Federal Aviation Administration, and National Transportation Safety Board, Respondents.**

**No. 73–1907.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 13, 1974.

Decided Sept. 3, 1974.

J. P. Dosland, Moorhead, Minn., for petitioner.

Judith S. Feigin, Atty., Dept. of Justice, Washington, D. C., for respondents.

Before JOHNSEN and VAN OOSTERHOUT, Senior Circuit Judges, and

TALBOT SMITH,* Senior District Judge.

PER CURIAM.

This case is before us on a petition under 49 U.S.C. § 1486(a) for review of an order of the National Transportation Safety Board suspending the license of James L. Aadland, a commercial pilot, for a period of four months.

Aadland had been charged in a complaint by the Administrator of the Federal Aviation Administration (FAA) with a violation of the Federal Aviation Regulations, 14 C.F.R., in having consumed alcoholic beverages within three hours prior to operating a Cessna 172 L aircraft, as pilot in command, on a passenger-carrying flight from Fargo, North Dakota, to Wahpeton, North Dakota.

The Regulations forbid any person to act as a crewmember of a civil aircraft within eight hours after the consumption of any alcoholic beverage. 14 C.F.R. § 91.11(a)(1). "Pilot in command" is defined in the Regulations as meaning "the pilot responsible for the operation and safety of the aircraft during flight time." Id. § 1.1.

An evidentiary hearing was accorded Aadland upon the complaint before an administrative law judge. The Administrator introduced evidence, by testimony and exhibits, to substantiate the charges of Aadland's having consumed alcoholic beverages and of his having acted as pilot in command on the flight. Aadland did not take the witness stand, nor did he offer any other testimony. The decision of the administrative law judge made findings that each of the charges had been duly established and constituted the facts of the situation, and it imposed a suspension of Aadland's license for a period of six months as a sanction for the violation. On the appeal taken by Aadland to the Board, the Board approved and adopted the findings so made, but it modified the sanction provision by reducing the suspension period from six to four months. As thus modified, the Board affirmed the decision of the administrative law judge.

On the review sought here, Aadland's brief makes no challenge to the finding of his having consumed alcoholic beverages within three hours prior to the flight. The sole issue presented, as stated in his brief, is whether the finding that Aadland had been "pilot in command of the aircraft of the flight in question is based on substantial evidence." Under 49 U.S.C. § 1486(e), "The findings of facts by the Board or Administrator, if supported by substantial evidence, shall be conclusive." Our examination of the record shows that the findings of the Board clearly are so supported.

The facts which follow are undisputed in the record. Aadland and a friend of his named Leland were the sole occupants of the Cessna aircraft on the flight involved. The plane took off from the Fargo Airport for Wahpeton shortly after 11:00 o'clock p. m., with Aadland occupying the lefthand or regular pilot seat; with him conducting the necessary radio communication with the control tower for runway positioning and takeoff authorization; and with him engaging in the takeoff operations. On the day following the flight, when he was interviewed by two FAA investigators who had been directed to check the situation, he admitted that he had been the pilot in command of the flight. Leland, who was separately interviewed by the FAA investigators, similarly stated that Aadland had been the pilot in command, and he confirmed on the witness stand that he had so stated to the investigators.

Aadland's contention here that the evidence is not sufficient to support the Board's finding as to his having been the pilot in command of the flight is predicated primarily on what he regards as the ambiguity and weakness shown

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

by matters brought out in Leland's cross-examination. The cross-examination showed that the Cessna was an aircraft utilized by Flight Development, Inc., in the fixed-base operations which it carried on at the Wahpeton Airport, of flight instruction, charter flights and plane rental; that Aadland was an employee of Flight Development, Inc., and constituted its chief pilot instructor; that on the day involved, Aadland and Leland had flown in the Cessna from Wahpeton to Fargo in the early evening to attend a "smelt fry"; that Leland, who had taken flying lessons from Aadland sufficient to qualify for and be issued a private pilot's license, had flown the plane from Wahpeton and acted "as pilot in command during the trip to Fargo"; that Leland had paid the rental fee of Flight Development, Inc., for the plane being used to make the trip to Fargo; and that on this basis he regarded himself as having a responsibility to Flight Development, Inc., for the return of it to Wahpeton.

He further testified that he had also flown the plane a part of the way to Wahpeton by using the dual control with which the plane was equipped on its righthand side (apparently for purposes of its instructional use), but he did not state at what point during the flight this had occurred or for how long or short a period it had lasted. Nor did he claim that it had extended to his making the nighttime approach and landing at the Wahpeton airport.

■ Whatever ambiguity this may have been intended by Leland to create as to his unequivocal statement to the FAA investigators that Aadland had been the pilot in command of the flight to Wahpeton, this did not as a matter of law deprive that positive statement of all probative force. It left the Board legally entitled to determine the effect of Leland's testimony in the light of his previous statement and of his final answer to the administrative law judge, when the latter sought to ascertain from him just what his position was intended to be on the question of pilot in command:

Q. * * * Let me ask you at this time: Who, in your opinion, was the pilot in command of that aircraft on the flight that evening into Wahpeton?

A. I would say Mr. Aadland was, mostly.

But beyond this, it also left the Board with the right to accord full credit and belief to Aadland's unrepudiated acknowledgment to the FAA investigators that he had been the pilot in command of the flight. Cf. Lihn v. Civil Aeronautics Board, 272 F.2d 674, 675 (3 Cir. 1959).

■ It is not necessary, however, to resolve the question of substantial evidence here upon Aadland's acknowledgment alone. Aadland's initial and continued occupancy of the regular pilot seat throughout the flight, his putting the plane into the air at Fargo and bringing it down at Wahpeton, and his apparent controlling of the aircraft except for the interval in which Leland was allowed to use the dual control (with even this being without indication of a relinquishment on Aadland's part of his power of primary control if it became necessary to exercise it) would itself have entitled the Board to hold that he had in such measure been "responsible for the operation and safety of the aircraft during flight time" as to constitute him a "pilot in command" under the Regulations. Or to go beyond this, Aadland's acknowledgment, together with the nature of the operation and control engaged in by him, and the responsibility for safety inherent in these acts, would in any event aggregately leave the situation without room for any contention here that the Board's determination was not based upon or supported by substantial evidence.

Affirmed.